USAMA KAHF (SBN 266443)
ukahf@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street
Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DAVID M. SHANNON (SBN 342187)
dshannon@fisherphillips.com
FISHER & PHILLIPS LLP
424 Church St, Suite 1700
Nashville, TN 37219
Telephone: (615) 488-2900
Facsimile: (615) 488-2928

MICHAEL F. RAFFERTY (*pro hac vice*)
mrafferty@harrisshelton.com
HARRIS SHELTON HANOVER WALSH, P.L.L.C.
6060 Primacy Parkway, Suite 100
Memphis, TN 38119
Telephone: (901) 525-1455
Facsimile: (901) 526-4084

Attorneys for Defendant
DREXEL CHEMICAL COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVEK SHAH,<br>Plaintiff,<br>v.<br>DREXEL CHEMICAL COMPANY,<br>Defendant. | CASE NO.: 2:26-CV-01605-HDV-KES<br>*Assigned for all purposes to the Honorable Hernan D. Vera*<br><br>**DEFENDANT DREXEL CHEMICAL COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: May 28, 2026<br>Time: 10:00 A.M.<br><br>Complaint Filed: February 11, 2026<br>Trial Date: Not Set |

## I. INTRODUCTION

Plaintiff's filing of his *101 page* First Amended Complaint ("FAC") at the eleventh hour further demonstrates his bad faith efforts in this action.[1] Rather than amend his original complaint after counsel for Drexel requested that he do so during meet and confer efforts, Plaintiff chose to wait until *after* Drexel had filed its Motion to Dismiss, expending substantial time, energy, and resources. Plaintiff then filed his FAC on his deadline to amend under FRCP 15(a)(1)(B), and filed a one page response to Drexel's Motion to Dismiss, claiming said Motion is "moot." Plaintiff's actions in this matter have caused undue delay, prejudice to Drexel, and demonstrate an overall bad faith motive to exact as much pain as possible on Drexel through the litigation process to procure "settlement" funds, rather than litigate the merits in good faith. Due to Plaintiff's continued bad faith, undue delay, and clear desire to prejudice Drexel in this matter, Drexel requests that this Court deny Plaintiff's ability to file his First Amended Complaint and grant Drexel's Motion to Dismiss his original complaint. Alternatively, this Court should dismiss Plaintiff's FAC *sua sponte* because his FAC fails to establish Article III standing.

## II. PLAINTIFF'S FAC SHOULD BE DENIED AS IT DEMONSTRATES PLAINTIFF'S BAD FAITH, UNDUE DELAY, FUTILITY OF HIS AMENDMENT, AND PREJUDICE TO DREXEL

### A. Plaintiff's FAC is Futile Because He Still Does Not Sufficiently Allege That He Has Article III Standing

This Court should find that Drexel's Motion to Dismiss is <u>not</u> rendered moot by Plaintiff's filing of his FAC because he fails to allege Article III standing in his original complaint and continues to fail to allege Article III standing in his FAC.[2] A

---

[1] Drexel uses the same defined terms from its Memorandum of Points and Authorities in Support of Motion to Dismiss in its Reply Brief.

[2] Plaintiff's Opposition to Drexel's Motion to Dismiss only raises the issue that the Motion to Dismiss is moot and does not oppose any of the arguments raised in Drexel's Motion to Dismiss. Therefore, any arguments Plaintiff could have raised in

court may *sua sponte* dismiss an action for lack of subject matter jurisdiction without notice and an opportunity to respond. *See Scholastic Entertainment, Inc. v. Fix Entertainment Group, Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *see also Darel v. Darel*, No. CV-06-2397-PHX-PGR, 2006 WL 3330600, at *2 (D. Ariz. Nov. 15, 2006).

In its Motion to Dismiss, Drexel noted that Plaintiff lacks Article III standing to bring this action because he failed to allege an injury-in-fact. [*See* ECF 18-1, IV.] Plaintiff's FAC faces the same deficiency, and as such, this Court should grant Drexel's Motion to Dismiss, or dismiss Plaintiff's FAC *sua sponte* because he lacks Article III standing.

Plaintiff amends his original five-page complaint, containing twenty-eight paragraphs and a three-point prayer for relief to add *two hundred and seventy-six new* paragraphs, *nine new* prayers for relief, *six new* causes of action, and almost *one hundred new* pages of allegations. [*Compare* ECF 1, 25.] Regardless of these excessive additions, Plaintiff still lacks Article III standing because he fails to allege an injury-in-fact.

Whether a harm is sufficiently concrete requires an assessment of whether the asserted harm has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424. Here, while Plaintiff adds dozens of pages regarding Drexel's alleged cookie usage, he continues to evade any allegation of actual personally identifiable information that would stand as a harm traditionally recognized as providing a basis for a lawsuit in American courts. Plaintiff repeatedly alleges that he "typed -text – any text whatsoever -into Defendant's on-site search bar[.]" [*See* ECF 25, ¶¶ 4, 59, 96, 98, 100, 101, 104-106, 111-114, 117-119, 152, 159, 165, 166, 176, 195, 218, 220, 236,

---

opposition to Drexel's Motion to Dismiss are waived. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) ("Since the district court did not have an opportunity to consider this argument, it is waived.").

243, 254, 264, 290.] However, the only allegations of what Plaintiff actually searched include "CALIFORNIA," "CALIFORNIA1," "CALIFORNIA12," "CALIFORNIA123" [ECF 25, ¶ 106] and "specific regulated pesticide active ingredients, agricultural chemical product categories, formulation and regulatory information, and related substantive commercial, regulatory, and investigative subjects." [ECF 25, ¶ 120.] Such search terms do not identify specific personal information that implicates a protectable private interest. *See Mitchner v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *3 (N.D. Cal. Aug. 6, 2025), appeal dismissed, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (internal quotation marks omitted); *see also Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *4 (S.D. Cal. Feb. 23, 2026) ("[b]are statutory violations are insufficient to establish injury in fact"); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926 (C.D. Cal. 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)) ("Congress may not 'enact an injury into existence' merely by granting a right to sue, and therefore there is no automatic satisfaction of the injury-in-fact requirement just because a plaintiff has a statutory right to sue."). Plaintiff underscores his own allegations by stating that the active ingredients contained on Drexel's website are "well-known pesticide, herbicide, fungicide, or insecticide active ingredient[s]." [*See* ECF ¶ 45.] If such ingredients are well known, his searching of these ingredients does not relay any personally identifiable information. Rather, it is "well-known" information that has no connection to any personally identifiable information of Plaintiff's, even if he alleges an "interest" in commercial agriculture chemicals. Merely searching terms on a search bar does not tie the search terms to a party's personally identifiable information. *See Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (finding that the fact that plaintiff "merely searched sensitive health related terms[,]" were not tied to his personal medical history."). Such basic search terms with no tie to

Plaintiff's personally identifiable information do not confer Article III standing for any of his causes of action alleged in his FAC. Thus, Plaintiff's original complaint and FAC fail to allege sufficient facts to establish Article III standing based on his basic search terms.

Plaintiff further alleges that Drexel caused his "device metadata, browser local-storage identifier, browser session identifier, and other signaling information" to be transmitted to various third parties. [*See* ECF 25, ¶¶ 5, 8, 25, 35, 58, 78, 81, 83, 89, 128, 130, 131, 138, 148, 150, 167, 178, 193, 208, 256.] However, courts have repeatedly held that collection of such metadata does not equal a cognizable harm. *See*, *e.g., In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-CV-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (dismissing for lack of standing because there is no cognizable privacy interest in device and browser information); *Silvia Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (collection of generic browser information insufficient to find cognizable privacy right). "The mere 'collection of basic contact information by … software[,] or where the plaintiffs merely visited the website[,] are not concrete harms.'" *Mitchner* 2025 WL 2272413, at *3 (quoting *Smidga v. Spirit Airlines, Inc.* No. 2:22-CV-1578-MJH, 2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024); *see also Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (refusing to find an injury in fact where plaintiffs alleged only that defendant tracked "browser and device data" and "other identifying information" alongside IP addresses). Indeed, in *Diaz et al. v. Paramount Skydance Corp. et al.*, No. EDCV 25-02945-KK-DTBx 2026 WL 1090958, at *4 (C.D. Cal., Apr. 20, 2026), the court found disclosure of the following data through website trackers is insufficient to establish standing: (1) title and URL of specific videos watched by minors; (2) unique identifiers that Google and Microsoft use to identify users; (3) information that is commonly used to create a browser fingerprint, such as IP address, language selection, screen resolution,

microprocessor type, internet browser software and version number, and operating system software and version number; and (4) records of how users move their mouse, how far they scroll, and the areas of the webpage that the user spent the most time reviewing).

Thus, Plaintiff's extensive allegations of basic browser and device data, including IP addresses is insufficient to allege injury-in-fact.

Lastly, Plaintiff alleges that the alleged "personal data – including browsing history, search queries, device identifiers, and behavioral signals" have substantial commercial value. [ECF 25, ¶¶ 154-156.] "Loss of value of [plaintiff's] private information … without any more details, is too abstract and speculative to support Article III standing." *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. CV182970PSGGJSX, 2019 WL 6522843, at *5 (C.D. Cal. Aug. 19, 2019) (internal quotation marks omitted). Indeed, "[i]n order to show injury in fact under this theory, [plaintiff] must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market. *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016). Even if Plaintiff sufficiently alleged the existence of a market for his personal information, "[s]uch allegations fail to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (analyzing loss of personal data under a California Unfair Competition Law cause of action). Here, while Plaintiff alleges a potential commercial value of his "personal data," he fails to allege a desire or inability to participate in any market in which he could sell his data.

Because Plaintiff continues to fail to allege Article III standing, this Court should grant Plaintiff's Motion to Dismiss, or in the alternative, dismiss Plaintiff's FAC *sua sponte*.

**B. Plaintiff Demonstrates His Bad Faith, Undue Delay, and Prejudice to Drexel by His Filing of his FAC at the Eleventh Hour**

Plaintiff continues his pattern of disingenuous and bad faith litigation. Plaintiff demonstrates his continued bad faith in this action through the following acts:

1. his refusal to amend his complaint after Drexel and Plaintiff met and conferred regarding the deficiencies in his original complaint and Drexel specifically requested that he amend his complaint [see ECF 18-2, ¶ 6];
2. his refusal to amend his complaint until *after* Drexel filed its Motion to Dismiss and his subsequent filing of a one-page opposition to the Motion to Dismiss [see ECF 27];
3. his filing of his FAC on the day of the deadline under Federal Rules of Civil Procedure ("FRCP"), Rule 15(a)(1)(B);
4. his filing of three frivolous motions, including a motion seeking to compel a Rule 26(f) conference when no scheduling order has been issued by this Court and two separate motions for sanctions based on the same underlying facts and seeking the same relief because he is upset we informed the Court that he is a convicted extortionist and is also targeting many businesses with the same claims he asserts in this case [see ECF 16, 22, 26]; and
5. his inclusion of *six new* causes of action based on the same underlying facts that Plaintiff alleged in his original complaint and failure to inform this Court or Drexel as to why these causes of action were not alleged with his original complaint.

All of which has caused substantial prejudice to Drexel and has required it, or will require it, to respond to each separate frivolous motion, and the considerable additions to his FAC.

Courts justify denial of leaves to amend when there are elements of undue delay, bad faith or dilatory motive, futility amendment, prejudice to the opposing party, and repeated failure to cure deficiencies by previous amendments. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).[3]

First, Drexel and Plaintiff met and conferred on April 2, 2026, to discuss Plaintiff's lack of Article III standing, lack of personal jurisdiction over Drexel, and failure to state a claim as to his CIPA section 631(a) cause of action. [ECF 18-2, ¶ 6.] When Drexel's counsel informed Plaintiff multiple times that he had an opportunity to amend his complaint to address the deficiencies Drexel raised in his complaint, Plaintiff rejected this opportunity and informed Drexel to go ahead and file its Motion to Dismiss. [ECF 18-2, ¶ 6.] Subsequently, Drexel filed its Motion to Dismiss on April 15, 2026. [*See* ECF 18.] After Drexel spent numerous hours and resources to file its Motion to Dismiss premised on the exact issues that it raised during its meet and confer with Plaintiff, Plaintiff chose to file his *101-page* FAC on May 6, 2026. [*See* ECF 25.] While delay alone is not enough to support denying a plaintiff's ability to amend a complaint, here, there is a showing of prejudice to Drexel, bad faith by Plaintiff, and futility of his amendment. *See Bowles v. Reade* (9th Cir. 1999) 198 F.3d 752, 758. Plaintiff purposefully delayed the filing of his FAC. Plaintiff filed his FAC after the parties met and conferred on April 2, 2026 and Drexel requested multiple times that Plaintiff amend his FAC. [ECF 18-2, ¶ 6.] Plaintiff refused to agree to amend, forcing Drexel to file the present Motion to Dismiss. [*Id.*] This refusal to amend after the parties met and conferred and

[3] Drexel recognizes that this standard applies to situations where a plaintiff seeks leave to amend from the court compared to the "matter of course" standard under FRCP 15(a)(1)(B). However, Drexel outlines Plaintiff's pattern of bad faith for this Court's awareness and that the standard for denial of leave to amend applies directly to Plaintiff's FAC.

subsequent amending of his complaint *after* Drexel filed its Motion to Dismiss demonstrates clear prejudice to Drexel.

Plaintiff also filed two separate but substantially similar motions for sanctions based on the same language used by Drexel in its Motion to Dismiss. [*See generally* ECF 22, 26.] Plaintiff now states that the Motion to Dismiss is moot based on his filing of the FAC [ECF 27] but Drexel is still forced to defend itself against both frivolous sanctions motions based on substantially the same underlying facts. Plaintiff had the ability to amend his complaint after the parties' meet and confer on April 2, 2026. Instead, Plaintiff let Drexel file its Motion to Dismiss, then filed two frivolous motions for sanctions based on a Motion to Dismiss, only to *then* file his FAC. Drexel is still forced to defend itself from these frivolous sanctions motions, and to submit a response to Plaintiff's FAC, all of which could have been avoided, but for Plaintiff's gamesmanship.

Lastly, Plaintiff's inclusion of hundreds of new allegations to his FAC based on the same website visits and search bar usage from November 7, 2024 to November 7, 2025 demonstrates his bad faith in filing this action. Plaintiff provides no explanation as to why such allegations and causes of action were not included in his original complaint. Instead, Plaintiff demonstrates his gamesmanship when he forced Drexel to file its Motion to Dismiss based on a single cause of action, and now, Drexel has an expedited timeline to file a response to Plaintiff's *101-page* FAC alleging *six new causes of action*. *See* FRCP(a)(3) ("[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). Plaintiff's clear gamesmanship in his refusal to amend his complaint when requested by Drexel has seriously prejudiced Drexel due to its shortened time frame to substantively respond to Plaintiff's six new causes of action and hundreds of additional factual allegations.

## III. CONCLUSION

For the foregoing reasons, the Court should grant this Motion to Dismiss Plaintiff's Complaint without leave to amend and dismiss this case with prejudice, or dismiss Plaintiff's First Amended Complaint *sua sponte* because Plaintiff fails to allege sufficient facts to establish Article III standing. Should this Court neither grant this Motion to Dismiss or dismiss Plaintiff's First Amended Complaint *sua sponte*, Drexel requests that the Court order Drexel's response to Plaintiff's First Amended Complaint be due on or before June 3, 2026 so Drexel may substantively respond to Plaintiff's six new causes of action and hundreds of additional factual allegations.

Dated: May 14, 2026 FISHER & PHILLIPS LLP

By:/s/ Usama Kahf
USAMA KAHF
DAVID M. SHANNON

HARRIS SHELTON HANOVER WALSH, P.L.L.C.

MICHAEL F. RAFFERTY

Attorneys for Defendant
DREXEL CHEMICAL COMPANY