Vivek Shah
1301 N Broadway, Ste 32167
Los Angeles, CA 90012
Telephone: (224) 246-2874
Email: newvivekshah@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VIVEK SHAH,<br><br>Plaintiff,<br><br>v.<br><br>DREXEL CHEMICAL COMPANY,<br><br>Defendant. | Case No. 2:26-cv-01605-HDV-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT DREXEL CHEMICAL COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Assigned to the Hon. Hernán D. Vera<br>Courtroom 5B<br><br>Hearing Date: June 25, 2026<br>Time: 10:00 a.m.<br><br>Action Filed: February 11, 2026 |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. THE COURT HAS PERSONAL JURISDICTION OVER DREXEL ....................................2

A. Drexel purposefully directed California-specific conduct at this State. ........................2

B. The conduct giving rise to my claims was expressly aimed at California. ....................3

C. The third parties' participation does not break the causal chain. ..................................5

D. At a minimum, jurisdictional discovery is warranted. ..................................................6

III. PLAINTIFF HAS ALLEGED A CONCRETE INJURY IN FACT ......................................6

A. Drexel mischaracterizes the search terms the FAC actually pleads..............................7

B. Search-query contents are not "metadata," and their interception is a concrete harm....7

C. The defeated "Reject All" election is a concrete injury Drexel's authorities do not share. ..........................................................................................................................9

D. Real-time interception is independently a concrete harm. ............................................9

E. *Diaz* and Drexel's other no-injury authorities are inapposite.......................................9

F. The "tester" argument fails as a matter of law and of procedure. ................................10

G. My loss of control and the diminished value of my data are cognizable injuries.........11

IV. VENUE IS PROPER IN THIS DISTRICT .........................................................................11

A. I invoked transactional venue, not residence. ...........................................................11

B. A substantial part of the events occurred in this District. ...........................................12

C. Dismissal is the wrong remedy. .................................................................................12

V. THE FIRST AMENDED COMPLAINT STATES A CLAIM ON EVERY COUNT ...........13

A. The First Cause of Action states a claim under the Federal Wiretap Act....................13

B. The Second Cause of Action states a claim under CIPA § 631(a)..............................15

1. The FAC pleads interception in transit, with both mechanism and timing. ......15

2. The third parties are third-party eavesdroppers, not exempt parties..................16

3. The claims under clauses three and four follow. ..............................................17

C. The Third Cause of Action states a claim under CIPA § 632(a)..................................18

1. The embedded tracking technologies are "devices" within § 632(a). ...............18

2. My communications were confidential, and confidentiality cannot be decided on the pleadings. ..........................................................................................19

D. The Fourth and Fifth Causes of Action state claims for intrusion and invasion of privacy.........................................................................................................................20

E. The Sixth and Seventh Causes of Action state claims for fraud and unjust enrichment. ....................................................................................................................21

VI. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND...........................................23

VII. CONCLUSION .....................................................................................................................23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) ....13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....13

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ....22

*Atkins v. Amplitude, Inc.*, 2025 WL 2521732 (N.D. Cal. 2025) ....8, 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....13

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ....6

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc) ....3, 4, 5, 6

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ....9, 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....3

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) ....5, 9, 22

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....9

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) ....22

*Deivaprakash v. Condé Nast*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025) ....8, 10, 11

*Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958 (C.D. Cal. 2026) ....9, 10

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....18

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) ....15

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013) ....19

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ....19

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ....4

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)........................................9, 11

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. 2025) ...................................5

*Garcia v. Truist Fin. Corp.*, 2026 WL 972328 (C.D. Cal. 2026) ...................................................5

*Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024)........................18

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .....................................................17

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...........................................6, 8

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .........................................21

*Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026)........................................5, 18

*Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073 (N.D. Cal. 2023) ...........................................16

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024)..............................16

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009)....................................................................20

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ....7, 14, 17, 20, 21, 22

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................19

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ..........................................................7, 20

*India Price v. Carnival Corp., 712 F. Supp. 3d 1347 (S.D. Cal. 2024) 16*
*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. 2022).................................................18

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................................14, 16

*Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024)....................................17

*Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610 (9th Cir. 2025).............................................15

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................8

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................................10, 22

*Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866 (N.D. Cal. 2021) .....................................................12

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ..................................................15

*Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026) ..............................8, 16, 17

*Mata v. Zillow Grp., Inc.*, 2024 WL 5161955 (S.D. Cal. 2024) ....................16

*Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025)....................10

*Moody v. Textron, Inc.*, 2025 WL 4085784 (C.D. Cal. 2025) ....................4

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................15

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ....................17

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................15, 16

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025)....................11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)....................2

*Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................17, 19

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................19

*Sussman v. Am. Broad. Cos.*, 186 F.3d 1200 (9th Cir. 1999) ....................14

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) ....................17, 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................6, 10

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ....................16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................6, 21

*Wooten v. BioLife Plasma Services L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025)....................10

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024) ....................17, 18

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................20

*Zocco v. Nelnet, Inc.*, 2026 WL 242037 (N.D. Cal. 2026) ....................14

**Statutes and Rules**

18 U.S.C. § 2511(2)(d) ....................14

28 U.S.C. § 1391(b)(2) ....................11, 12

28 U.S.C. § 1406(a) ....................12

Cal. Civ. Code § 1798.100 .......... 20

Cal. Penal Code § 631(a) .......... 12, 14, 15, 16, 17

Cal. Penal Code § 632(a) .......... 14, 18

Cal. Penal Code § 637.7(d) .......... 18

Fed. R. Civ. P. 8 .......... 16, 21

Fed. R. Civ. P. 9(b) .......... 21

Fed. R. Civ. P. 12(b)(1) .......... 6

Fed. R. Civ. P. 12(b)(2) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 13

Fed. R. Civ. P. 15(a)(2) .......... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant moves[1] to dismiss the FAC that pleads, with forensic specificity, how Drexel engineered its website to transmit the contents of my electronic communications to third parties in real time and without my consent. The motion does not meet that pleading. On every ground it raises, Drexel either misstates the record or misapplies the governing law.

On personal jurisdiction, Drexel asks the Court to treat it as a stranger to California. The judicially noticeable record establishes the opposite. Drexel has been registered to do business in California since 2009 and maintains a California agent for service of process; it manufactures and sells a product its own website labels "ONLY For Sale in California;" it holds numerous California pesticide registrations and paid a California regulatory settlement in 2025; it staffs a dedicated California sales territory and is hiring to expand it; and—dispositive of any claim that California is an unfair or unforeseeable forum—Drexel's own Terms of Use designate the courts of California as the exclusive forum for "all disputes arising out of or relating to the use of" the very website at issue.

On standing, Drexel tells the Court that the "only" terms I entered into its search bar were trivial "CALIFORNIA" test strings. The paragraph Drexel cites for that assertion contains no search terms at all. The FAC pleads seventeen named active-ingredient searches reflecting genuine research interests, and it pleads that I clicked "Reject All" and was tracked anyway—an injury none of Drexel's authorities share.

On the merits, Drexel's arguments depend on quotations that stop in the middle of the sentence and on authorities that, read in full, defeat its motion. The motion should be denied.

[1] Among other violations, Defendant filed an oversized brief without leave of court. See ECF No. 35.

Should the Court find any portion of the FAC deficient, I respectfully request jurisdictional discovery as to the contested jurisdictional facts and leave to amend.

**II. THE COURT HAS PERSONAL JURISDICTION OVER DREXEL**

Because Drexel's Rule 12(b)(2) motion is decided on written materials rather than an evidentiary hearing, I need only make a *prima facie* showing of jurisdictional facts; the Court takes my uncontroverted allegations as true and resolves factual conflicts in my favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). I do not rely on general jurisdiction, so Drexel's general-jurisdiction discussion (Mem. 3) is beside the point; specific jurisdiction alone suffices, and Drexel contests only its first prong—purposeful direction (Mem. 4–7). That prong is satisfied many times over.

**A. Drexel purposefully directed California-specific conduct at this State.**

Drexel's "passive website" framing cannot survive its own public records and admissions. Drexel filed a Statement and Designation by Foreign Corporation with the California Secretary of State in 2009, designated a California agent for service of process, and irrevocably consented to service in California; it reconfirmed that registration in a 2024 Statement of Information describing its business as the manufacture and wholesale of agricultural chemicals.[2] (RJN Exs. A, B.) Drexel manufactures and markets DynaPhite™ 0-28*-26, a product its own website states is "ONLY For Sale in California." (Shah Decl. Ex. G.) Drexel holds numerous California pesticide registrations under registrant prefix 19713 (RJN Exs. I, L); it paid a $28,479 settlement to the California Department of Pesticide Regulation in 2025 (RJN Ex. J); and it has been the respondent in a

[2] Drexel's 2009 registration and the accompanying Tennessee Certificate of Existence identify it as a Tennessee corporation; its 2024 Statement of Information lists its formation state as Texas. (RJN Exs. A, B.) The inconsistency in Drexel's own filings does not affect the analysis—either way Drexel is a foreign corporation that registered in, and consented to suit in, California.

California regulatory enforcement action (RJN Ex. L). In an August 4, 2025 letter to the U.S. EPA, Drexel committed to "Restrict all uses in California except for Imperial County" for its atrazine products—a California-specific regulatory undertaking. (Shah Decl. Ex. H.) Drexel publishes a “California Transparency in Supply Chains Act” disclosure—a statute that by its terms applies only to manufacturers “doing business in” California with substantial revenue. (Shah Decl. Ex. D.) Drexel hosts a dedicated "California Testimonials" page promoting Drexel Carbaryl 5% Bait to a California tomato grower in Firebaugh. (Shah Decl. Ex. C.). And Drexel maintains a dedicated California sales representative and has advertised a “Western Region Manager” position whose territory expressly “includes California.” (Shah Decl. Exs. E, K.) These are deliberate, repeated, California-specific choices—the antithesis of the “random, isolated, or fortuitous” contacts Drexel invokes.

Drexel’s own Terms of Use are independently dispositive of the fairness inquiry. Drexel published terms providing that the user “consent[s] to the exclusive jurisdiction and venue of courts in San Mateo County, California, U.S.A. in all disputes arising out of or relating to the use of the Drexel Chemical Company Web Site,” and that provision was continuously published from at least 2017 through 2025. (Shah Decl. Exs. F, N, O.) I do not invoke those Terms as a contract binding me; I offer them as Drexel’s own designation of California as the forum for website-use disputes. A defendant that selected California courts for precisely this category of dispute cannot be heard to argue that it could not reasonably anticipate being haled into court here. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 482 (1985).

**B. The conduct giving rise to my claims was expressly aimed at California.**

Drexel’s purposeful-direction argument applies a framework the en banc Ninth Circuit has overruled. In *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), the court held that

an interactive online platform "expressly aims" its conduct at a forum when its contacts are its "own choice and not random, isolated, or fortuitous," even where the platform cultivates a nationwide audience for commercial gain, and it overruled the prior requirement of "differential targeting" of the forum. *Id.* at 755–58. Drexel's contention that I must show "something more" than a "passive website" and "conduct directly targeting the forum" (Mem. 5) is a verbatim invocation of the differential-targeting rule *Briskin* abolished.

Drexel's remaining express-aiming argument inverts the inquiry. Drexel quotes *Briskin*'s "own choice and not random, isolated, or fortuitous" formulation and then insists the relevant choice was mine—to visit the site and type (Mem. 5–6). But the inquiry asks whether the defendant's contacts were its deliberate choice, not whether the plaintiff used the website. *Briskin*, 135 F.4th at 755–58. The relevant contacts are Drexel's: it configured its search bar to send my keystrokes to Google in real time, embedded an autoplay Vimeo player that transmitted my device and session data on load, and programmed its site to detect California IP addresses and route that data to third parties. (FAC ¶¶ 4–5, 16(e), 95–102, 192.) Conduct a defendant designs, deploys, and configures is the opposite of fortuitous. And *Briskin* confirms that a defendant's California-specific conduct remains affirmative evidence of express aiming, *id.* at 758 n.17—evidence Drexel supplies through its California-only product, its California registrations, and its California forum clause. The claims arise out of and relate to that California-directed conduct, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021), because the interception was completed on my California device (FAC ¶ 18).

Drexel's reliance on *Moody v. Textron Inc.* (Mem. 4–7) does not change the result. To the extent Drexel reads *Moody* to require "something more" than the operation of a tracking-laden website, or to hold that "choosing to install code" that intercepts user data is not express aiming,

that reading cannot be reconciled with *Briskin*'s holding that a defendant's deliberate, non-fortuitous deployment of tracking technology is express aiming. *Briskin*, 135 F.4th at 755–58. Post-*Briskin* courts in this District have accordingly found express aiming where a non-resident operator embedded third-party trackers and collected California users' data. *Garcia v. Truist Fin. Corp.*, No. 2:25-cv-05753-MEMF-PVC, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026); *Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026). Drexel's invocation of *Shah v. Hilton Worldwide Holdings Inc.* (Mem. 7) does not cabin *Briskin*; a defendant that embeds active third-party trackers and collects California users' data is not engaged in the "passive nationwide accessibility" those cases address. *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1025 (C.D. Cal. 2025).

Drexel's characterization of my California-specific allegations as a set of "tenuous connections" measured against the overruled differential-targeting standard (Mem. 6) likewise fails; under *Briskin*'s footnote 17 that conduct is affirmative evidence of express aiming. Applying that footnote, a court held that a website's identification of California privacy law "serves as evidence of express aiming." *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957 *8 (N.D. Cal. July 14, 2025).

**C. The third parties' participation does not break the causal chain.**

Drexel argues that any harm flows from the independent conduct of Google, Vimeo, and Bending Spoons rather than from Drexel (Mem. 6–7). The argument fails because Drexel chose the trackers, embedded them in its website, configured them, and routed California users' data to them. The third parties' receipt of that data is the intended and foreseeable consequence of Drexel's own design, not an intervening cause. The interception occurred on my California-based device and as my data traversed California networking infrastructure (FAC ¶ 18), and it continued after I

elected to reject non-essential cookies (FAC ¶ 138). Drexel cannot escape jurisdiction by pointing to the servers to which it deliberately routed the data it captured.

The case law forecloses Drexel's causal-break theory. In *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023) the court rejected the identical argument, holding that the third parties are "merely the vessel" for the operator's data-collection tools and that their actions "do not sever the causal connection" between the operator's conduct and the plaintiff's injury. So too here.

**D. At a minimum, jurisdictional discovery is warranted.**

If the Court entertains any doubt, the proper course is jurisdictional discovery, not dismissal. Discovery should be permitted where pertinent jurisdictional facts are controverted or a more satisfactory showing is necessary. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Drexel's declaration does not deny that it deployed the Google and Vimeo integrations, configured its site to receive California geolocation data, or sells products into California, and it affirmatively concedes a California-based employee (Mem. 2). Discovery into Drexel's configuration of its tracking tools and its knowledge of its California visitors bears directly on whether its contacts were its "own choice," *Briskin* at 755–58, and should precede any dismissal.

**III. PLAINTIFF HAS ALLEGED A CONCRETE INJURY IN FACT**

Drexel's Rule 12(b)(1) motion is a facial attack, so the Court accepts my well-pleaded allegations as true and draws all reasonable inferences in my favor. An intangible harm is concrete for Article III purposes when it bears a "close relationship" to a harm traditionally recognized as a basis for suit at common law—a category that expressly includes "disclosure of private information" and "intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021). My allegations satisfy that standard on several independent grounds.

**A. Drexel mischaracterizes the search terms the FAC actually pleads.**

Drexel represents that "[t]he only allegations of what Plaintiff entered in the search bar are 'CALIFORNIA,' 'CALIFORNIA1,' 'CALIFORNIA12,' 'CALIFORNIA123.'" (Mem. 10, citing FAC ¶ 106.) That is not what the FAC alleges. The CALIFORNIA strings are a single documented session, captured in a HAR file to evidence the per-keystroke interception mechanism (FAC ¶ 105); the paragraph Drexel actually cites, ¶ 106, concerns the Referer header and contains no search terms at all. The substance of my searches is pleaded at ¶ 120, which alleges repeated, non-test searches for seventeen named active ingredients—azoxystrobin, atrazine, chlorothalonil, captan, carbaryl, dicamba, MSMA, metolachlor, fomesafen, glyphosate, clethodim, imazethapyr, tebuconazole, malathion, dimethoate, lambda-cyhalothrin, and 2,4-DB—together with specific Drexel product names, reflecting my commercial, agronomic, regulatory, and research interests. The Court must take those allegations as true; it may not adopt Drexel's recharacterization of them.

**B. Search-query contents are not "metadata," and their interception is a concrete harm.**

Drexel sweeps my search terms into a "metadata" bucket and argues that disclosure of metadata is not cognizable (Mem. 10–11). But search queries are the contents of a communication, not routing data. The Ninth Circuit has squarely held that URLs disclosing search terms are protected "contents," distinguishing the bare navigation data at issue in *In re Zynga*. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). And the same court recognized that the disclosure of a person's browsing and search activity, compiled into a profile, is a concrete injury closely related to the common-law privacy torts. *Id.* at 598–600. The FAC alleges that Drexel transmitted the in-progress contents of my queries to Google on every keystroke, capturing my iterative research—including drafts, hesitations, and deletions—character

by character (FAC ¶¶ 117, 120). That is the disclosure of communication contents, not the bare metadata Drexel's authorities address.

In any event, my injury is not the facial content of any single term; it is the combination of that search-query content with persistent, cross-correlating identifiers that resolves an anonymous visitor into an identified profile. The FAC alleges that Drexel's embedded Vimeo player transmitted a universally unique local-storage identifier that resolves my browser across Bending Spoons' network of embedded players (FAC ¶ 130), and that the combination of my IP address, page-visit pattern, search queries, session duration, and video-viewing behavior "constitutes a personally identifying profile" (FAC ¶¶ 256, 267(c)). That is the loss of anonymity through profiling, not the disclosure of an isolated identifier—the very distinction on which Drexel's authorities turn.

Every court in this Circuit to analyze that combination has found standing. See *Atkins v. Amplitude, Inc.*, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) (sustaining standing on essentially the data types I allege—search terms, device identifiers, and device-fingerprint data—reasoning that their combination may reveal a consumer's sensitive attributes); *Deivaprakash v. Condé Nast*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025) (holding it immaterial whether the plaintiff had a reasonable expectation of privacy in any single datum, because the injury is the loss of anonymity through profile-building itself). Accord *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 862 (N.D. Cal. 2026) (de-anonymization by combining search-term URLs with personal identifiers); *Greenley v. Kochava, Inc.* at 1024 (S.D. Cal. 2023).

**C. The defeated "Reject All" election is a concrete injury Drexel's authorities do not share.**

I allege that I read Drexel's cookie banner, clicked "Reject All," and was tracked anyway—my data continued flowing to Google, Vimeo, and Bending Spoons in defiance of my election (FAC ¶¶ 6, 136–138). The deprivation of control over my information after I expressly refused consent is itself a concrete injury to my privacy. See *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) (user who rejected cookies and was tracked anyway alleged a concrete privacy injury). The metadata cases on which Drexel relies, including *Diaz*, share a feature this case does not: in none did the plaintiff reject tracking and then suffer continued tracking. That distinction is dispositive.

**D. Real-time interception is independently a concrete harm.**

Drexel repeatedly recasts my claims as resting on the premise that I "merely visited" its website (Mem. 11–12). I allege the opposite—that the contents of my communications were intercepted by an unauthorized third party in real time, contemporaneously with my typing and while in transit (FAC ¶¶ 110, 117). The interception is itself a completed harm, independent of whatever the recipients later did with the data. *Casillas* at 1027.

The authority is uniform. *Brown v. Google LLC*, *supra*, holds that without-consent collection violates the concrete privacy interests the Wiretap Act and CIPA protect, regardless of how the data was later used. And *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) holds that secret, real-time interception is a concrete harm and that CIPA codifies a substantive privacy right that supports standing.

**E. *Diaz* and Drexel's other no-injury authorities are inapposite.**

Drexel leans most heavily on *Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958 (C.D. Cal. 2026) (Mem. 9–11). *Diaz* is distinguishable on the two facts that drive concreteness here.

First, the *Diaz* disclosures—video titles and device identifiers from passive viewing—did not "by itself link [the plaintiffs'] watch history to them as individuals." *Id.* at 4. Here, the FAC pleads a universally unique, cross-network local-storage identifier (FAC ¶ 130) combined with the contents of my search queries, which together "constitute[] a personally identifying profile" (FAC ¶ 256). Second, the *Diaz* plaintiffs never rejected tracking; I did (FAC ¶¶ 136–138). And to the extent *Diaz* turned on the absence of "highly offensive" conduct, that is an element of the intrusion tort, not a prerequisite for Article III injury, which is governed by the common-law-analog inquiry of *TransUnion*. 594 U.S. at 424–25.

Drexel's remaining metadata authorities fail on their own terms. *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) denied standing because the plaintiffs alleged only a bare IP address and vague "other identifying information," and it expressly declined to reach the tester defense Drexel presses. *Id.* at 1179–81. *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025) dismissed because the complaint did not link the collection to the individual plaintiffs—and it separately held that the software captured content, not mere routing information, confirming that my search queries are content. And *Wooten v. BioLife Plasma Services L.P.*, 807 F. Supp. 3d 1139, 1148–49 (E.D. Cal. 2025) denied standing for a one-time collection of an IP address and an email while expressly distinguishing cases—like Atkins, *Gabrielli*, and *Deivaprakash*—that involved "something more." I allege all of that "something more" and none of the bare-metadata limitations.

**F. The "tester" argument fails as a matter of law and of procedure.**

Drexel's fallback is that I am a "tester" who therefore had no expectation of privacy and no injury (Mem. 12). The argument fails for three reasons. First, the premise rests on extrinsic materials—a request for judicial notice and a declaration—not on the FAC, and it cannot be

resolved against me on a facial standing motion; the FAC alleges that I am personally interested in Drexel's products and that my non-test searches reflected genuine interests (FAC ¶¶ 120, 157–158), and those allegations must be taken as true. Second, the reasonable-expectation inquiry is objective, which makes my asserted purpose legally irrelevant; the question is what a reasonable person in my position would expect. *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBX, 2026 WL 1278912, at *4–5 (C.D. Cal. May 5, 2026) (tester status "alone does not preclude" standing and "did not affect" the plaintiff's expectations where she rejected cookies). Third, Drexel's own lead authority does not support the relief it seeks: the *Autotrader* order Drexel cites for its no-injury theme dismissed without prejudice and described the claim as "not futile." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 927 (C.D. Cal. 2025).

**G. My loss of control and the diminished value of my data are cognizable injuries.**

Drexel argues that I cannot show a diminution in the value of my data or any "unjust" disclosure (Mem. 12–13). The loss of control over the dissemination of my communications is itself the concrete injury, independent of any downstream economic loss. *Deivaprakash* at 1107; *Gabrielli v. Haleon US Inc.* at 865. I separately allege that my communications carry quantifiable commercial value that Drexel transferred to the third parties without compensation, notice, or a meaningful opportunity to decline (FAC ¶¶ 154–156, 269). Drexel's demand that I prove an "appreciable and actual" economic loss is a merits argument misplaced at the pleading stage, where every inference runs in my favor.

**IV. VENUE IS PROPER IN THIS DISTRICT**

**A. I invoked transactional venue, not residence.**

Drexel argues that it does not "reside" in any California district (Mem. 14). That addresses a basis I never asserted. I pleaded transactional venue under 28 U.S.C. § 1391(b)(2) (FAC ¶ 20)—

venue in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Whether Drexel resides here does not answer that separate question.

**B. A substantial part of the events occurred in this District.**

The events giving rise to my claims occurred where my communications were intercepted: on my California device, in real time, as I typed, while I was physically located in Los Angeles County (FAC ¶¶ 18, 20, 105, 110). For my CIPA claim, the location from which the communication is sent is a statutory element—Section 631(a) reaches a communication "being sent from . . . any place within this state." Cal. Penal Code § 631(a). Where the location from which the communication was sent is an element of the offense, that location is necessarily a substantial part of the events giving rise to the claim. Section 1391(b)(2) does not require that this District be the exclusive or even the predominant locus; it requires only a substantial part, and venue may be proper in more than one district. Even crediting Drexel's assertion that its website-design decisions were made in Tennessee, the interception—a substantial, claim-generating event—was completed here.

**C. Dismissal is the wrong remedy.**

Drexel's lead venue authority defeats its requested relief. *Knuttel v. Omaze, Inc.* found venue proper and transferred the case to the district where the defendant's conduct was centered; it did not dismiss, and it arose as an intra-California venue dispute. (Mem. 14–15.) At most, *Knuttel* supports transfer to a proper California venue—never dismissal to Tennessee. And dismissal is unavailable in any event: Section 1406(a) authorizes transfer "in the interest of justice" when venue is improper, and venue here is proper. Drexel's request to dismiss in favor of its Tennessee declaratory-judgment action fails because that action—filed after I sent Drexel a pre-suit demand and an unfiled California complaint (Mem. 1)—is an anticipatory, forum-shopping filing entitled

to no deference, and because dismissing a later-filed action in favor of a first-filed one is error. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625–28 (9th Cir. 1991). Drexel's own Terms of Use, moreover, designate California—not Tennessee—as its chosen forum. (Shah Decl. Exs. F, N, O.)

## V. THE FIRST AMENDED COMPLAINT STATES A CLAIM ON EVERY COUNT

To survive a Rule 12(b)(6) motion, the FAC need only contain well-pleaded factual allegations that, accepted as true and viewed in the light most favorable to me, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Each of my seven causes of action clears that bar.

### A. The First Cause of Action states a claim under the Federal Wiretap Act.

Drexel's party-exception argument rests on recharacterizing my pleading. Drexel asserts that "the FAC alleges that the contents of Plaintiff's communications were intercepted by Drexel itself" (Mem. 16)—but that is not my allegation. The FAC alleges that "Defendant and the Third Parties—acting at Defendant's invitation, instruction, and with Defendant's procurement—intentionally intercepted" my communications (FAC ¶ 219); that I was "not a 'party'" to the communications between Drexel and the third parties (FAC ¶ 221); and that Drexel "procured" the interceptions by deliberately embedding and configuring the third parties' tracking instruments (FAC ¶ 223). The claim is procurement of interception by third-party eavesdroppers, not self-interception by a party.

The party exception does not reach that conduct. The Ninth Circuit has held that the "simultaneous, unknown duplication and communication of GET requests" does not exempt a website operator under the party exception, because permitting "the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods

of intrusion, allowing the exception to swallow the rule." *In re Facebook*, 956 F.3d at 607–08. The same analysis governs the ECPA and CIPA. *Id.* at 607. Notably, Drexel cites the district court opinion in that very litigation for the elements of an ECPA claim (Mem. 16)—an opinion the Ninth Circuit reversed in part on the precise point that forecloses Drexel's party defense.

The third parties are eavesdroppers, not parties, because each has the capability to use—and did use—the intercepted data for its own purposes. The exemption turns on whether the recipient has the capability to use its record of the communication for an independent purpose, not on whether it labels itself a service provider. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). The FAC alleges that Google, Vimeo, and Bending Spoons each build and monetize cross-site behavioral profiles from the data they receive (FAC ¶¶ 62, 70, 73–75), and that each "has the capability to use, and has in fact used, the intercepted contents of my communications for its own independent commercial purposes" (FAC ¶ 240). Drexel quotes only the first half of that sentence (Mem. 18), omitting the operative clause.

The crime-tort exception independently defeats the party exception. Even a party loses the exemption where it intercepts "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). The test looks to the purpose of the interception—its intended use—not to whether the interception itself violated another law. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). The FAC alleges that Drexel's interceptions were made for the purpose of enabling the third parties' commercial exploitation of my communications, in violation of intrusion upon seclusion, the California constitutional right of privacy, and Penal Code §§ 631(a) and 632(a) (FAC ¶ 222), with the contemporaneous intent to cause the interceptions (FAC ¶ 223). That a commercial motive accompanies the tortious purpose does not defeat the exception. Drexel's contrary cases are inapposite: *Zocco v. Nelnet, Inc.*, 2026 WL 242037 (N.D. Cal. 2026) found no

interception where the user transmitted information directly to the defendant, and *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610 (9th Cir. 2025) affirmed dismissal where the plaintiff failed to allege the defendant was not a party (Mem. 16)—the opposite of what the FAC alleges.

The further use I identify is independent of the interception itself: the association of my communications with the third parties' preexisting, cross-site identity profiles, and their downstream monetization (FAC ¶¶ 62, 70, 73–75). Courts hold that such association is a "further use" satisfying the exception, and that a profit motive does not insulate a defendant from it. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849–50 (E.D. Cal. 2025); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024).

**B. The Second Cause of Action states a claim under CIPA § 631(a).**

**1. The FAC pleads interception in transit, with both mechanism and timing.**

An actionable interception must be acquired during transmission, not from electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002). At the pleading stage, that element requires allegations of the mechanism of capture and its timing relative to transmission—not technical proof. The FAC supplies both in granular detail. It alleges that Drexel implemented its search bar using a JavaScript library configured so that each keystroke issues an HTTPS GET request "not to Defendant's own server but, instead, to clients1.google.com," carrying the in-progress query in the "q" parameter, with the specific Google autocomplete parameters and the "Referer: https://drexchem.com/" header (FAC ¶¶ 95–98, 102). And it alleges the timing—per-keystroke, contemporaneous transmission, corroborated by a timestamped forensic record showing successive requests transmitting "CALIFORNIA," "CALIFORNIA1," "CALIFORNIA12," and "CALIFORNIA123" milliseconds apart as I typed (FAC ¶¶ 105, 110(b),

236). That is precisely the mechanism-and-timing detail Drexel's own cases (*Keurig*; *Super Bright*) found missing. *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024), is directly on point: visitors who entered terms into an embedded Google-powered search bar adequately pleaded in-transit interception, and search terms are "contents." Whether the capture is ultimately characterized as "transit" or "storage" is a fact-intensive question that cannot be resolved on the pleadings.

The recent decisions apply this standard exactly as I plead it. *Riganian v. LiveRamp, Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) sustained the claim where event listeners intercepted communications "while in transit, once user inputs are made but before the communications are received by the webpage." *Krzyzek* sustained the claim where a pixel captured the full-string URL "within seconds" and rejected the demand that the plaintiff identify which specific URLs he visited. *Id.* at 868. *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1360 (S.D. Cal. 2024) sustained allegations of capture "at hyper-frequent intervals, often just milliseconds apart." Accord *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955 *6 (S.D. Cal. Dec. 18, 2024) (the standard "is not overly burdensome").

Drexel's assertion that I offer "no . . . information regarding [my] alleged searches, except for [my] conclusory statements" (Mem. 18) is contradicted by the FAC itself, which pleads the mechanism across paragraphs 95–102 and quotes the search strings verbatim at paragraphs 105–106. Rule 8 requires a short and plain statement, not the attachment of network captures.

**2. The third parties are third-party eavesdroppers, not exempt parties.**

For the reasons set out above, Drexel's party-exemption defense fails under § 631(a). The controlling question is capability, not the "software-as-a-service" label. *Javier*, 649 F. Supp. 3d at 900. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) does not hold otherwise; its holding was expressly conditioned on the absence of independent use—"there are no allegations here that FullStory intercepted and used the data itself"—and *Graham* itself distinguished entities that "mined information from other websites and sold it." *Id.* at 832–33. The FAC's cross-referenced paragraphs plead exactly that independent, data-monetizing use as to Google, Vimeo, and Bending Spoons (FAC ¶¶ 55–56, 62, 70, 73–75), and *In re Facebook* forecloses the exemption for such recipients, 956 F.3d at 608.

This capability approach is the dominant and most recent line of authority. See *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 955 (E.D. Cal. 2025) (a recipient that "reserv[es] the capability to utilize" the data is "distinct from one of the parties to the call"); *Krzyzek* at 868. *Smith v. Google, LLC* is directly on point as to Google: it denied Google's motion on a § 631(a) claim arising from embedded Google code, holding that "Google is still the one 'reading' and/or 'using' the data it collects." *Id.* at 1197–98. The dismissals Drexel relies on turned on pleading specificity, not a categorical rule: *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024) confirmed that "an independent party that captures data from a hosting website to sell to advertisers . . . has been considered an eavesdropper." *Id.* at 946. The firsthand-dissemination harm the statute addresses—"simultaneous dissemination to an unannounced second auditor"—is precisely what I plead. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985).

**3. The claims under clauses three and four follow.**

Drexel's only argument as to the third and fourth clauses of § 631(a) is that my failure under clauses one and two "inherently" defeats them (Mem. 19). Because I state a claim under clauses one and two, that derivative argument fails. The fourth clause independently reaches one who aids, agrees with, or conspires with another to commit a violation, and turns on the third party's predicate conduct.

**C. The Third Cause of Action states a claim under CIPA § 632(a).**

**1. The embedded tracking technologies are "devices" within § 632(a).**

Drexel argues that, "[a]ccording to Plaintiff," the scripts, pixels, and logging systems at issue "are software, and not a 'device'" (Mem. 20, citing FAC ¶¶ 27, 28, 30). That misstates my pleading and the law. Paragraphs 27, 28, and 30 are neutral technical definitions; none disclaims that those technologies are recording instruments. My operative allegation is the opposite—that Drexel and the third parties "used electronic recording devices, instruments, or processes" to record my communications (FAC ¶ 253). On the law, Section 632(a) contains no requirement that an "electronic amplifying or recording device" be physical, and courts have held that intercepting software is a "device." See *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023). The physicality limitation Drexel implies comes from a different statute—Penal Code § 637.7(d), governing "electronic tracking device[s]"—and does not carry over to § 632(a). CIPA is a privacy-protecting statute and is construed to serve that purpose. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022).

Every court to confront the question has rejected the premise that software cannot be a "device." *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 959–60 (N.D. Cal. 2024); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957–58 (E.D. Cal. 2025) (recording software is a device

"even though it is not physical"); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 852–55 (W.D. Wash. 2024) ("device . . . can include software"). Two recent decisions from this District confirm the point for embedded tracking technology: *Hassid* and *Garcia*.

**2. My communications were confidential, and confidentiality cannot be decided on the pleadings.**

Drexel and I agree the test is objective, but Drexel never states what it asks. A communication is confidential when a party reasonably expects that no one is secretly listening or recording; the California Supreme Court has drawn the "substantial distinction" between the "secondhand repetition" of a conversation and "its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775–77 (2002). The silent, real-time transmission of my queries to Google, Vimeo, and Bending Spoons is the latter. My expectation is anchored in Drexel's own Privacy Statement—which represented that third parties were "prohibited from using your personal information except to provide these services to Drexel Chemical Company"—and in my "Reject All" election (FAC ¶¶ 146, 255, 257; Shah Decl. Ex. M). There is no presumption against online confidentiality. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024). And Drexel's lead authority holds the opposite of what Drexel claims: the Ninth Circuit "disagree[d]" that a consumer's call to a business "can never" be confidential, holding the question turns on the circumstances. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 f.n. ** (9th Cir. 2013). Confidentiality is fact-intensive and not resolvable on this motion.

The fact-intensive nature of the inquiry independently bars dismissal. Whether a communication is confidential is a "'fact-intensive inquiry' that is often too difficult to resolve at the pleadings stage." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024)

(citing *Brown v. Google LLC*). And a policy that restricts third-party use tends to support a reasonable expectation of confidentiality. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

**D. The Fourth and Fifth Causes of Action state claims for intrusion and invasion of privacy.**

Drexel concedes the governing framework—reasonable expectation of privacy plus a highly offensive intrusion, *In re Facebook*, 956 F.3d at 601 (Mem. 21)—but the authorities it cites to state that framework defeat its motion. My expectation does not rest on a generalized interest in browsing data; it rests on Drexel's affirmative promise. The Ninth Circuit holds that the decisive fact establishing a reasonable expectation of privacy is that the entity represented the information would not be collected and then collected it anyway. *Id.* at 603. That is what I allege: Drexel's Privacy Statement promised that third parties were confined to serving Drexel (FAC ¶ 146), and I relied on it (FAC ¶ 266). Drexel's no-expectation cases are inapposite: *In re Zynga* was a "contents" holding, not an expectation holding, and the Ninth Circuit distinguished it on that basis, and *Yoon* involved no transmission to any third party, whereas I allege transmission to Google, Vimeo, and Bending Spoons (FAC ¶¶ 138, 148).

The legal landscape Drexel's older cases predate has also changed. California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 et seq., gives California residents a recognized interest in controlling the collection and sharing of their information (FAC ¶ 265), and that interest informs the reasonable expectations of present-day internet users—limiting the force of the pre-CCPA authorities on which Drexel relies.

Whether Drexel's intrusion was highly offensive cannot be decided now. The Ninth Circuit holds that whether data collection of this kind could highly offend a reasonable person is not

resolved at the pleading stage, *In re Facebook*, 956 F.3d at 606, and the inquiry weighs the degree and setting of the intrusion against any countervailing interests, *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009). Drexel labels its conduct "routine commercial behavior" (Mem. 22–23), but its own authority recognizes that surreptitious collection is more likely highly offensive and distinguished *In re Facebook* only because the policy there was "ambiguous" rather than deceitful. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2022). I allege deception, not ambiguity: an affirmative "Reject All" representation that Drexel ignored (FAC ¶¶ 136–139). The Fifth Cause of Action survives for the same reasons, and the seriousness of the invasion is itself a fact question.

**E. The Sixth and Seventh Causes of Action state claims for fraud and unjust enrichment.**

Drexel first contends that because I allege "a unified course of fraudulent conduct," Rule 9(b) governs the FAC "as a whole" (Mem. 23). That inverts the rule. Where fraud is not an essential element of a claim, Rule 9(b) reaches only the specific averments of fraud, and the remaining allegations are tested under Rule 8(a). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Rule 9(b) therefore governs the Sixth Cause of Action and nothing else.

The fraud count satisfies Rule 9(b). The "who" is Drexel, which controls its own website code. The "what" is quoted, not paraphrased: the banner's representation that clicking "Reject All" would decline non-essential cookies, and the Privacy Statement's representations that third parties were "prohibited from using your personal information" except to serve Drexel and that Drexel "does not sell, rent or lease its customer lists" (FAC ¶ 285; Shah Decl. Ex. M). The "when" is not the bare four-year window Drexel describes (Mem. 24); the FAC pins November 7, 2025, corroborated by a contemporaneous Network-panel screenshot and millisecond-resolution HAR timestamps (FAC ¶¶ 105, 112, 292). The "where" is identified by URL, and the "how" is the

architecture detailed at FAC ¶¶ 95–112. Falsity and reliance are not resolved on the pleadings, and intent may be averred generally.

Drexel's "duty to disclose" argument (Mem. 25) is directed at a claim I do not bring. My fraud claim rests on affirmative misrepresentations—the banner and the Privacy Statement—and an affirmative-misrepresentation claim requires no duty to disclose and no commercial transaction. Drexel's related contention that I "never disclosed any personal information to Drexel" misframes the claim: falsity turns on Drexel's representations about its own practices, and in any event each keystroke I typed was transmitted in real time (FAC ¶¶ 105–112).

The damages element is adequately pleaded. The loss of control over my communications and the diminution in the value of my personal data are cognizable injuries; the loss of control is itself the harm the privacy torts protect. *In re Facebook*, 956 F.3d at 598–600. I did not "merely visit" the site (Mem. 25); I clicked "Reject All" in reliance and was tracked anyway (FAC ¶¶ 113, 285, 290).

Diminution-in-value and loss-of-control are cognizable at the pleading stage without quantification. *D'Antonio* holds that allegations that the data "had financial value" and that the collection caused a "diminution of the value" of personally identifiable information suffice to plead fraud damages. *Id.* at 938. *Gabrielli* and *Casillas* accepted the same theory at the pleading stage; and *Gabrielli* distinguished the IP-address authorities—including *Khamooshi*—on the ground that there "is no privacy interest" in an IP address. My pleading turns on the contents of my queries, not bare identifiers.

The unjust-enrichment claim is properly pleaded as quasi-contractual restitution. Drexel's own authority confirms it: although California recognizes no freestanding "unjust enrichment" label, a court "may construe" such allegations "as a quasi-contract claim seeking restitution,"

which then proceeds. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). I plead the claim in exactly that posture, in the alternative, and disclaim any enforceable contract (FAC ¶¶ 295–298).

**VI. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND**

Drexel asks the Court to dismiss the FAC with prejudice and without leave to amend. That relief is strongly disfavored. Leave to amend "shall be freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), and dismissal without leave is improper unless the Court determines that amendment would be futile. Should the Court dismiss any portion of the FAC, I respectfully request leave to amend and, as to any jurisdictional ruling, leave to take jurisdictional discovery.

**VII. CONCLUSION**

For the foregoing reasons, I respectfully request that the Court deny Drexel's motion to dismiss in its entirety.

Dated: June 4, 2026

Respectfully submitted,

/s/ Vivek Shah

Vivek Shah

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing Memorandum of Points and Authorities contains exactly 6,999 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word-processing program used to prepare it, and therefore complies with the 7,000-word limit of Local Rule 11-6.1.

/s/ Vivek Shah

Vivek Shah