USAMA KAHF (SBN 266443)
ukahf@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street
Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DAVID M. SHANNON (SBN 342187)
dshannon@fisherphillips.com
FISHER & PHILLIPS LLP
424 Church St, Suite 1700
Nashville, TN 37219
Telephone: (615) 488-2900
Facsimile: (615) 488-2928

MICHAEL F. RAFFERTY (*pro hac vice*)
mrafferty@harrisshelton.com
HARRIS SHELTON HANOVER WALSH, P.L.L.C.
6060 Primacy Parkway, Suite 100
Memphis, TN 38119
Telephone: (901) 525-1455
Facsimile: (901) 526-4084

Attorneys for Defendant
DREXEL CHEMICAL COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIVEK SHAH,

Plaintiff,

v.

DREXEL CHEMICAL COMPANY,

Defendant.

CASE NO.: 2:26-CV-01605-HDV-KES
*Assigned for all purposes to the Honorable Hernan D. Vera*

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: June 25, 2026
Time: 10:00 a.m.

Complaint Filed: February 11, 2026
Trial Date: Not Set

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's opposition does not cure the defects identified in Drexel's Motion. Drexel moved to dismiss because Plaintiff failed to (a) establish personal jurisdiction, (b) plead Article III standing, (c) establish proper venue, and (d) state any claim under the ECPA, CIPA, privacy, fraud, or unjust-enrichment theories. [ECF 33-1.][1] In response, Plaintiff largely repackages the FAC, adds argument about public records and website materials, and reframes his theories as though repetition were amendment. But the core problems remain. Plaintiff still does not tie his claims to suit-related conduct purposefully directed by Drexel at California, still does not plead a concrete injury based on disclosure of genuinely private information, still cannot establish venue in this District based on his own location alone, and still does not allege facts sufficient to state a plausible interception or privacy claim.

## II. LEGAL ARGUMENT

### A. Plaintiff Fails to Allege Sufficient Personal Jurisdiction

Plaintiff's opposition confirms that Drexel is not "at home" in California and that his claims do not arise from suit-related conduct purposefully directed here. Drexel's Motion established that Drexel is a Tennessee corporation headquartered in Memphis, had no California offices or facilities during the relevant period, had one California employee out of more than 250, did not provide direct sales of its products to individual consumers, and offered no ecommerce function through the website.

---

[1] Plaintiff filed a "Notice of Non-Compliance with Local Rules 7-3, 7-4, 11-3.93, 11-62, and 11-8 and with the Court's Civil Standing Order" alleging Drexel violated various local rules in its Motion to Dismiss. [ECF 35.] While Plaintiff's claims in the "Notice" are meritless, Plaintiff also provides no authority that such a "Notice" is properly before the Court. To the extent that this Court considers Plaintiff's "Notice," it should either consider this Plaintiff's Opposition to Drexel's Motion to Dismiss Plaintiff's FAC, and disregard Plaintiff's Opposition to Defendant Drexel Chemical Company's Motion to Dismiss the First Amended Complaint [ECF 45], or disregard this improper "Notice" and solely consider Plaintiff's purported opposition. Plaintiff should not be afforded what effectively are two oppositions.

[ECF 33-1, 2:12-24.], Plaintiff does not dispute those core facts.

Instead, Plaintiff points to California registration filings, pesticide-related regulatory matters, one California sales employee, California-related website content, and an asserted California forum clause in the website terms. [ECF 45.] But those allegations do not establish that the claims here arise from conduct Drexel expressly aimed at California through the challenged website features. As Drexel presented in its Motion, Plaintiff's theory depends on his own choice to visit the website and enter information, and on the alleged conduct of third parties such as Google and Vimeo. [ECF 33-1, p. 6:24-7:7.]

Plaintiff leans heavily on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) to argue that he need not show differential targeting. [ECF 45 p. 4.] Even taking Plaintiff's reading of that case at face value, he still must show suit-related contacts created by Drexel's own deliberate conduct toward California. Nationwide website accessibility plus a California plaintiff who chose to browse the site is not enough to establish personal jurisdiction. *See Moody v. Textron Inc. et al.*, No. 2:25-CV-01032-MWC-E, 2025 WL 4085784, at *1 (C.D. Cal. Dec. 18, 2025). Plaintiff's California contacts remain, at most, background business contacts and generalized website accessibility allegations—not claim-specific jurisdictional facts sufficient to hale Drexel into this Court. Indeed, while Plaintiff presents the choice of venue clause in the Terms of Use on Drexel's website, he expressly declares that he "do[es] not invoke those Terms as a contact binding [him]." [ECF 45 p. 3.] Thus, such a clause has no bearing on Plaintiff's claim at hand as he is not suing for breach of those terms or claiming to be subject to those terms. Further, the *Moody* court established that such tenuous connections to California are insufficient to find that a defendant has purposefully availed itself to the jurisdiction of California. *See Moody*, at *4 (finding nine open jobs in California out of 500 and a notice related to the California Transparency in Supply Chains Act insufficient to establish express aiming).

Nor does Plaintiff solve the causation problem for jurisdiction. Drexel argues

that Plaintiff's harm theory depends on the acts of third parties, not California-directed acts by Drexel. [ECF 33-1 p. 6-7.] Plaintiff's opposition reinforces that point by repeatedly emphasizing what Google, Vimeo, and Bending Spoons supposedly did with the data and how those entities allegedly monetize or profile user information. [ECF 45, p. 5-6.] That does not create specific jurisdiction over Drexel. Indeed, there is "no allegation that Plaintiff purchased anything from Defendant's website, nor entered into any contract through Defendant's website, nor that Defendant obtained money from Plaintiff in California." [Request for Judicial Notice in Support of Reply Brief ("RJNRB"), Ex. A, p. 12.] While Plaintiff alleges that Defendant's website targeted California residents through its terms of use and California oriented products, Plaintiff does not allege that *he* entered a contract with Drexel for such products or sought to purchase such products. Indeed, such products are *not available for purchase* through Drexel's website. [ECF 33-2, ¶ 11-12.]

Finally, Plaintiff's request for jurisdictional discovery should be denied. Plaintiff asks for discovery if the Court has doubt. [ECF 45, p. 6.] But Plaintiff already identifies the very facts on which he relies. Discovery is not warranted where, as here, the pleaded and proffered facts still do not establish personal jurisdiction. Jurisdictional discovery would be a fishing expedition and a waste of time, as it could not possibly lead to the discovery of any facts that would contradict Plaintiff's own allegations and other judicially noticeable facts on Drexel's lack of any express aiming or targeting of California residents or Plaintiff himself through the website.

### B. <u>Plaintiff Fails to Allege Article III Standing</u>

Plaintiff also fails to allege a concrete injury. Drexel's Motion explains that to establish injury in fact, Plaintiff must identify specific personal information implicating a protectable privacy interest and show a concrete harm with a close relationship to traditionally recognized injuries. [ECF 33-1, pp. 8-13.] Plaintiff's opposition fails to do so.

Plaintiff argues that Drexel mischaracterized his searches and points to alleged

searches for seventeen pesticide active ingredients, along with "Reject All" allegations. [ECF 45, pp. 9-10.] But Drexel's standing argument never turned solely on the number of search terms alleged. It turned on the absence of genuinely private, personally identifying content, or any sensitive data. The search terms Plaintiff highlights concern "well-known pesticide, herbicide, fungicide, or insecticide active ingredient[s]," and the motion argued that such terms do not reveal specific personal information implicating a protectable privacy interest. [ECF 33-1, p. 11.]

Plaintiff's reliance on combinations of device identifiers, page visits, and session information fares no better. Drexel's Motion specifically addressed allegations concerning "device metadata, browser local-storage identifier, browser session identifier, and other signaling information" and explained that courts have repeatedly found such metadata insufficient to constitute cognizable harm in this context. [ECF 33-1, pp. 11-12.] Plaintiff attempts to convert those technical allegations into a theory of de-anonymization or profiling, but he still does not plead facts plausibly linking the data to him as an identified individual in a way that creates a concrete Article III injury. "To survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (internal quotation marks and citation omitted); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) ("[C]ourts make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue."). Here, Plaintiff has failed to identify the specific personal information that would allow for Article III standing, and thus, his FAC must be dismissed for lack of subject matter jurisdiction.

Plaintiff's attempt to distinguish *Diaz v. Paramount Skydance Corp.,* No. EDCV 25-02945-KK-DTBX, 2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) is likewise unpersuasive. Plaintiff says *Diaz* involved passive video-viewing data, whereas he alleges unique identifiers, search terms, and a "Reject All" choice. [ECF

45, p. 19-20.] But the central point remains the same: Plaintiff still does not allege disclosure of information that, by itself or as plausibly pleaded, reveals protected private information about him in a historically analogous sense.

Indeed, in the recently decided Central District of California case of *Schallert v. Laird Superfood, Inc.*, the court found that the plaintiff failed to allege sufficient Article III standing to support his CIPA claim based on alleged tracking software Defendant executed within Plaintiff's browser. [RJNRB, Ex. B, p. 3:1-2.] The court found that plaintiff failed to allege what plaintiff specifically did on defendant's website or what specific information the website captured from him. [*Id.* at p. 9:25-27.] The court went on to conclude that, plaintiff failed to allege that he personally interacted with defendant's website in a manner that would reveal any "highly sensitive health-related information." [*Id.* at p. 11:2-10.] Thus, the court granted defendant's motion to dismiss because plaintiff failed to allege a concrete and particularized injury. [*Id.* at p. 10:14-16.] Here, Plaintiff also fails to allege what specific information that was allegedly captured would reveal any "highly sensitive information" other than chemical ingredients while searching a *chemical company website*. Such search terms, even in combination with various metadata does not rise to the "highly offensive" standard required for Article III standing.

Similarly, in *Vivek Shah v. Talentbridge, Inc.*, No. 2:26-CV-00222-AH-SSCX, 2026 WL 1507888 (C.D. Cal. May 28, 2026), the court dismissed Plaintiff's first amended complaint with prejudice. The *Talentbridge* court held that Plaintiff failed to show a protectable privacy interest in the generic search terms. *Id.* at *3. The court rejected Plaintiff's claim that searching "felony-friendly job opportunities or jobs with no background checks" was sufficient to tie his search to his sensitive personal information. *Id.* Thus, the court found that "[t]he alleged privacy invasion here is therefore not 'similar to the "highly offensive"' interferences or disclosures that were actionable at common law." *Id.* (quoting *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Here, Plaintiff's FAC is deficient for the same reasons raised by

Talentbridge against him – he has no protectable privacy interest in his generic agricultural chemical searches and his corresponding metadata. Nothing in Plaintiff's searches disclose personal information subjecting his claim to the standard necessary to allege an injury in fact.

Further, Plaintiff also cannot evade the relevance of his tester status. Plaintiff is a self-described tester plaintiff and his own litigation posture undermines any claimed reasonable expectation of privacy. [ECF 33-1, pp. 12-13.] Plaintiff responds that tester status depends on extrinsic materials and is legally irrelevant. [ECF 45, pp. 10-11.] But at a minimum, Plaintiff's alleged status reinforces the implausibility of his asserted expectations, reliance, and claimed injury. Plaintiff does not identify the specific personal information that is disclosed, other than general search terms, device identifiers, and device-fingerprint data, without more to show that such information implicates a protectable privacy interest. Thus, Plaintiff fails to establish Article III standing to bring his claim.

**C. <u>Venue is Improper in this District</u>**

Plaintiff's venue argument also fails. Drexel's Motion explained that the venue inquiry focuses on Defendant's acts, and that the challenged decisions regarding website design, embedded scripts, consent, and disclosures were made in Tennessee, making Plaintiff's Los Angeles website access only a triggering event. [ECF 33-1, pp. 13-15.] Plaintiff responds that he invoked transactional venue because the alleged interception occurred on his device while he was in Los Angeles County. [ECF 45, pp. 12-13.] But that reframes the inquiry around Plaintiff's location rather than Drexel's conduct. As decided in *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 869 (N.D. Cal. 2021), "Plaintiff's website access was merely a triggering event, not the locus of the conduct giving rise to the claims." *Id.*

The core of Plaintiff's claims concerns the design and configuration of website tools and disclosures. Plaintiff offers no basis to conclude those decisions occurred in this District. If the Court reaches venue and declines dismissal, the appropriate

alternative would be transfer the case to Tennessee where the decisions giving rise to Plaintiff's claims were allegedly made.

### D. Plaintiff's ECPA Claim Still Fails

Plaintiff's ECPA claim still fails. Drexel's Motion argues that the FAC alleges the contents of Plaintiff's communications were intercepted by Drexel itself, which defeats the claim because a party may intercept its own communications, and that the crime-tort exception is not adequately pleaded. [ECF 33-1, pp. 15-16.] Plaintiff attempts to reframe the FAC as alleging procurement by third-party eavesdroppers and points to assertions that Google, Vimeo, and Bending Spoons had the capability to use information for independent purposes. [ECF 45, pp. 13-15.]

That does not cure the pleading defect. The alleged communications were made through Drexel's website, and Plaintiff's assertions of independent commercial use are conclusory. Nor does Plaintiff plausibly allege that the purpose of any interception was to commit an independent criminal or tortious act, rather than to operate website functionality and associated services. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) ("Plaintiffs cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious…. [T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – its intended use – was criminal or tortious."). Plaintiff's opposition therefore does not save the ECPA claim.

### E. Plaintiff's CIPA Section 631(a) Claim Still Fails

Plaintiff still does not plausibly plead an in-transit interception by a third-party eavesdropper. Drexel argues that Plaintiff offered no concrete factual basis establishing when interception occurred, relied on conclusory "real time" allegations, and did not provide fair notice of the technical basis for the claim. [ECF 33-1, pp. 18-19.] Plaintiff responds that the FAC pleads a Google autocomplete mechanism, specific parameters, referrer data, and requests milliseconds apart. [ECF 22, pp. 15-16.] But those are still Plaintiff's own technical characterizations and do not plausibly

establish actionable interception by a non-party as opposed to ordinary website functionality or storage-related processing. Plaintiff fails to establish that these third parties in fact utilize *his* "personal" information as alleged.

Plaintiff also fails to allege a third-party eavesdropper. Drexel relied on the principle that service providers acting as extensions of the website operator are not eavesdroppers, as Plaintiff himself alleges that those third parties provided software-as-a-service. [ECF 33-1, pp. 17-19.] Plaintiff's "capability" and "independent use" allegations do not change that because they remain conclusory.

**F. Plaintiff's CIPA Section 632 Claim Still Fails**

Plaintiff's Section 632 claim fails for the same reasons identified in Drexel's Motion. Drexel argued that the alleged scripts, pixels, SDKs, and logging tools are software rather than a "device" under Plaintiff's own characterization, and that the FAC does not plead facts showing any communication was confidential. [ECF 33-1, pp. 19-20.] Plaintiff now argues that software can qualify and that confidentiality is fact-intensive. (ECF 45, pp. 19-20.] Even putting the device issue aside, the alleged website searches and interactions here are not plausibly pleaded as confidential under the circumstances, especially where Plaintiff allegedly visited the site as a tester seeking privacy claims. There is nothing confidential or sensitive about any of the search terms Plaintiff allegedly entered on the website.

**G. Plaintiff's Common Law Claims Still Fail**

The common-law and constitutional privacy claims also fail. Drexel argues that Plaintiff had no reasonable expectation of privacy in the data allegedly collected and that the alleged conduct was not highly offensive, but instead routine commercial behavior. [ECF 33-1, pp. 24-25.] Plaintiff says his expectation of privacy arose from Drexel's Privacy Statement and from his clicking "Reject All." [ECF 45, pp. 21-22.] Even so, he still does not plausibly allege disclosure of sufficiently protected information or conduct so serious as to constitute a highly offensive intrusion.

### H. Plaintiff's Fraud and Unjust Enrichment Claims Still Fail

Finally, Plaintiff's fraud and unjust-enrichment theories remain deficient. Drexel argued that the FAC does not plead fraud with Rule 9(b) particularity, does not allege appreciable and actual economic loss, and does not support an unjust-enrichment theory based on the alleged facts. [ECF 33-1, pp. 23-24.] Plaintiff responds that the FAC quotes specific statements, identifies dates and URLs, and pleads unjust enrichment in the alternative as quasi-contractual restitution. [ECF 45, pp. 21-23]. But Plaintiff still does not plausibly allege actionable falsity, cognizable damages, or non-speculative reliance. While Plaintiff claims that loss of control over his communications and the diminution in the value of his personal data are harms, Plaintiff fails to allege the existence of a market for his personal information and any reasonable impairment of him to participate in that market. *See In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. CV 18-02970-PSG-GJSx, 2019 WL 6522843, *5 (C.D. Cal. Aug. 19, 2019). Plaintiff's claim that his pleading turns on the content of his queries is also demonstrative of the lack of damages because Plaintiff fails to identify any specific queries other than various chemicals on an *agricultural chemical manufacturer's website*. Such alleged searches cannot be found to be unjust because such information on a agricultural chemical manufacturer's website is so common that it cannot reasonably be considered private. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025). Thus, Plaintiff cannot establish fraud or unjust enrichment claims.

## III. CONCLUSION

For the foregoing reasons, and for those set forth in Drexel's opening memorandum, the Court should dismiss the FAC in its entirety and without leave to amend. In the alternative, if the Court concludes dismissal is not warranted on venue grounds, it should transfer this case to Tennessee rather than permit it to proceed in this District.

Dated: June 11, 2026

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DAVID M. SHANNON

HARRIS SHELTON HANOVER WALSH, P.L.L.C.

MICHAEL F. RAFFERTY

Attorneys for Defendant
DREXEL CHEMICAL COMPANY