**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIVEK SHAH,

Plaintiff,

v.

DREXEL CHEMICAL COMPANY,

Defendant.

Case No. 2:26-cv-01605-HDV-KES

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [33] AND DENYING PLAINTIFF'S MOTIONS FOR SANCTIONS [22, 26] AND MOTION FOR ENTRY OF SCHEDULING ORDER AND ORDER DIRECTING RULE 26(f) CONFERENCE [16]**

## I. INTRODUCTION

This action arises out of Plaintiff Vivek Shah's ("Plaintiff") purported use of Defendant Drexel Chemical Company's ("Defendant" or "Drexel") website. Plaintiff alleges that his search queries were transmitted to third parties, such as Google, in violation of his request to reject third-party cookies and without his notice or consent. *See generally* First Amended Complaint ("FAC") [Dkt. 25].

Before the Court is Drexel's Motion to Dismiss the FAC ("Motion"). [Dkt. 33]. Defendant avers that Plaintiff fails to establish personal jurisdiction over Drexel, lacks Article III standing or venue, and fails to state a claim. *Id.* at 1.

For the reasons discussed below, Drexel's Motion is granted. The Court concludes that Plaintiff has failed to allege a concrete injury sufficient to confer Article III standing.

## II. BACKGROUND[1]

Drexel is a corporation incorporated in Tennessee, which markets more than five hundred agricultural chemical products nationwide. FAC ¶ 11. Drexel operates a website (https://www.drexchem.com/) (the "Website") that markets and advertises over five hundred chemical products, including pesticides, herbicides, fungicides, and insecticides to growers, distributors, retailers, and consumers, among others, nationwide. *Id.* ¶ 1.[2] Drexel's Website includes a search bar in the header of each page which consists of a text box and a magnifying glass icon that allows users to locate different content within the Website. *Id.* ¶ 46. The Website includes a page titled "About Us," which presents photographs, a video player, and information about the company. *Id.* ¶ 48.[3] The video player "depicts aerial and ground footage of agricultural fields, crop spray equipment, and related content." *Id.*

---

[1] At the motion-to-dismiss stage, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] *See also* Drexel Chemical Company, <u>Products</u> https://drexchem.com/products/ (last visited Jul. 1, 2026).

[3] *See also* Drexel Chemical Company, <u>About Us</u> https://drexchem.com/about-us/ (last visited Jul. 1, 2026).

Plaintiff alleges that he accessed Drexel's Website from his personal computer using the Google Chrome browser at least fifteen times between November 7, 2024 and November 7, 2025. *Id.* ¶¶ 103, 119. He entered search queries for the terms "CALIFORNIA," "CALIFORNIA1," "CALIFORNIA12," and "CALIFORNIA123" in the Website's search bar, as well as searches for pesticide ingredients, agricultural chemical products, Drexel product names and formulations, and "related substantive commercial, regulatory, and investigative subjects."[4] *Id.* ¶¶ 103, 105, 120, 159, 176. Plaintiff alleges that these searches reflect his "private commercial, agronomic, regulatory, safety, and product-research interests." *Id.* ¶¶ 120, 159.

The FAC contends that Plaintiff's search queries were transmitted to Google in real time regardless of whether there were any matching results on the Website. *Id.* ¶¶ 103, 108–10. On November 7, 2025, Plaintiff again accessed the Website, typed a "five-character search query" and obtained screenshots showing that his search had "triggered at least three separate cross-site GET requests to clients1.google.com." *Id.* ¶ 112. This occurred, Plaintiff maintains, even though he had selected "Reject All" on the Website's cookie management banner, which he believed constituted declining to consent to all non-essential cookies. *Id.* ¶¶ 113, 136–37, 162. Plaintiff typed multiple characters into the search bar every time he visited the Website, "resulting in a cumulative total of hundreds of individual interception events." *Id.* ¶ 119.

Plaintiff also visited the "About Us" page in Drexel's Website on at least four separate occasions. *Id.* ¶¶ 123, 161, 179. A Vimeo-hosted video depicting agricultural fields and equipment began "autoplaying" upon entering the page. *Id.* ¶ 124. Once Plaintiff accessed this page, he alleges that his browser "began making a cascade of HTTPS requests to Vimeo's servers" and "sending beacon transmissions to Vimeo's telemetry endpoints." *Id.* ¶¶ 126–27. These transmissions

[4] Plaintiff alleges that he searched seventeen active ingredients on Drexel's Website: azoxystrobin, atrazine, chlorothalonil, captan, carbaryl, dicamba, MSMA, metolachlor, fomesafen, glyphosate, clethodim, imazethapyr, tebuconazole, malathion, dimethoate, lambda-cyhalothrin, and 2,4-DB. *Id.* ¶ 120.

conveyed Plaintiff's IP address to Vimeo and Bending Spoons, along with other metadata.[5] *Id.* ¶¶ 128–31.

Plaintiff claims that Drexel's representations in its Privacy Statement, *see id.* 143–147, were material to his decision to use the Website and that Drexel and third parties tracked and collected a series of private communications, including search queries, pages visited, IP addresses, cookie values, language preferences, and device information, among others. *Id.* ¶¶ 151–52. In total, Plaintiff estimates that he accessed Drexel's Website on at least fifteen different occasions during the relevant time period, used the search bar at least once during each visit, and that "at least 800 separate interception events of the contents of [his] electronic communications" occurred during these visits. *Id.* ¶¶ 166, 185. Finally, Plaintiff avers that the "interception architecture" in Drexel's Website remains in place since Drexel continues to operate the Website in substantially the same manner. *Id.* ¶¶ 213–14.

Plaintiff filed this action on February 11, 2026, and initially brought a single cause of action against Defendant under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a). Complaint ¶ 1 [Dkt. 1]. After Drexel moved to dismiss the complaint, Plaintiff filed the FAC on May 6, 2026, alleging seven causes of action against Defendant including for violation of the Federal Wiretap Act, 18 U.S.C. §§ 2510–2523; violations of the California Invasion of Privacy Act ("CIPA"), under Cal. Penal Code §§ 631(a) and 632(a); intrusion upon seclusion; invasion of privacy; fraud, deceit, and misrepresentation; and unjust enrichment. *See* FAC ¶¶ 216–304 [Dkt. 25].

Before the Court, in addition to Drexel's Motion, are two motions filed by Plaintiff seeking sanctions against Drexel and its counsel [Dkts. 22, 26], and a motion for entry of a scheduling order and rule 26(f) conference [Dkt. 16]. The Court heard oral argument on June 25, 2026, and took the matters under submission. [Dkt. 53].[6]

---

[5] Plaintiff contends that his IP address, user-agent string, referrer URL, browser session, and time-stamped information regarding the playback session were transmitted to Vimeo. *Id.* ¶ 128.

[6] Plaintiff submitted a request for judicial notice concerning public records and screen captures of the "Terms of Use" on Drexel's Website [Dkt. 46]. In turn, Drexel filed two requests for judicial

(Continued . . .)

## III. LEGAL STANDARD

Rule 12(b)(1) allows a party to challenge claims in an initial pleading for lack of subject-matter jurisdiction. "It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The party invoking federal jurisdiction bears the burden of showing that they have standing. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430–31 (2021).

## IV. DISCUSSION

Drexel contends that Plaintiff has failed to plead a concrete injury sufficient to establish Article III standing. Motion at 1. Specifically, Drexel maintains that Plaintiff's query searches of the terms "CALIFORNIA," "CALIFORNIA1," "CALIFORNIA12," "CALIFORNIA123," as well as information related to agricultural products, fail to establish that Plaintiff suffered an injury in fact as these terms "do not identify specific personal information that implicates a protectable privacy interest." Motion at 10–11. Drexel further contends that disclosure of this type of metadata does not constitute a cognizable harm. *Id.* at 11–12. The Court agrees.

To establish standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an

---

notice of filings submitted in civil and criminal cases involving Plaintiff [Dkt. 34] and other litigants [Dkt. 50]. Since these records and filings are not relevant to determining whether Plaintiff has standing to pursue his claims, the Court declines to take judicial notice of them.

injury in fact, a plaintiff must show that he suffered “an invasion of a legally protected interest” that is “concrete and particularized” and “actual or imminent, not conjectural or hypothetical.” *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). The Supreme Court instructs that “courts should assess whether the alleged injury to the plaintiff has a ‘close relationship’ to a harm ‘traditionally’ recognized as providing a basis for a lawsuit in American courts.” *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (quoting *TransUnion*, 594 U.S. at 424); *see also Spokeo*, 578 U.S. at 341. “That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.” *TransUnion*, 594 U.S. at 424.

Plaintiff attempts to characterize his search queries and their context as rendering his identity de-anonymized by contending that “it is the combination of that search-query content with persistent, cross-correlating identifiers that resolves an anonymous visitor into an identified profile,” Opposition at 8 [Dkt. 45], and that “the combination of my IP address, page-visit pattern, search queries, session duration, and video-viewing behavior ‘constitutes a personally identifying profile.’” *Id.* (quoting FAC ¶¶ 256, 267(c)). The Court finds this argument unconvincing.

“To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable private interest.” *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025) (citations omitted). Here, the search terms Plaintiff entered are generic and pertained to “well-known” active ingredients, FAC ¶ 45, and do not disclose ***any*** personal information about Plaintiff or his identity. The fact that the searches were made in the context of Plaintiff’s unspecified “pattern(s)” and “behavior(s)” does not render them any more individualized. Moreover, it is well settled in the Ninth Circuit that “there is no legally protected privacy interest in IP addresses.” *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (“Internet users have no expectation of privacy in ... the IP addresses of the websites they visit.”).

Plaintiff’s reliance on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) for his contention that the interception of search-query contents is a concrete harm is inapposite. *See* Opposition at 7 [Dkt. 45]. In *In re Facebook, Inc.*, the Ninth Circuit concluded that

plaintiffs had alleged a sufficiently concrete and particularized harm by claiming that Facebook "continued to collect their data after they had logged off the social media platform, in order to receive and compile their *personally identifiable browsing history*… 'no matter how sensitive' or personal users' browsing histories were… including what they did when they were not using Facebook." *Id.* at 598–99 (emphasis added). These facts are easily distinguishable from this case as Plaintiff has not identified ***any*** personal or sensitive information that was collected from his interactions with Drexel's Website.[7] The allegations in the FAC simply do not implicate a protectable privacy interest.

Plaintiff's attempt to establish a concrete harm via a close relationship to traditionally recognized injuries similarly misses the mark. The Supreme Court has made clear that a lawsuit may not proceed when the plaintiff "has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 427. Traditionally recognized harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," among others. *Id.* at 425; *Popa*, 153 F.4th at 792 (four distinct torts traditionally arose from privacy-related harms at common law: intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light) (citation omitted). Even in the context of a statutory violation, a concrete injury is required to confer Article III standing. *Id.*

---

[7] Plaintiff relies on a series of factually distinguishable district court cases. *See Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1105 (N.D. Cal. 2025) (discussing allegations concerning trackers that collect and store information which "uniquely identif[ies]" each user); *Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) ("Disclosure of facts that allegedly reveal this highly sensitive information is sufficient to allege a concrete privacy harm analogous to those actionable under common law privacy torts"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (plaintiff alleged that he "received a document from Oracle indicating Oracle had tracked, compiled, and analyzed his web browsing and other activity and thereby created an electronic profile on him"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 860–61 (N.D. Cal. 2026) (plaintiff alleged that defendant operated pixel technology to "[track] in real time and [record] indefinitely the personal information and specific web activity of hundreds of millions of Americans"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (defendant collected personal information related to "personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices").

at 426 (citing *Spokeo*, 578 U.S. at 341). "To show intrusion upon seclusion, a plaintiff must show 'an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*'" *Popa*, 153 F.4th at 791 (citations omitted).

Plaintiff also fails to allege any "highly sensitive information" to support his claims, as his searches were for generic chemical ingredients on the website of a chemical company. The decision in *Popa v. Microsoft Corp.* is instructive on this issue. 153 F.4th at 784. In *Popa*, the plaintiff alleged that her interactions with a website offering pet supplies had been recorded by session-replay software which then reproduced her activity and provided it to the website's owner for analysis. *Id.* at 786–87. The Ninth Circuit concluded that Popa's alleged injury was not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," as she failed to identify any kind of "embarrassing, invasive, or otherwise private information" that the session-replay software had collected. *Id.* at 791.

The Ninth Circuit's reasoning in *Popa* is analogous here. Plaintiff's action against Drexel is based on the premise that the content of his search queries, his IP address, and other metadata were transmitted to third parties in real time when he used Drexel's Website. FAC ¶¶ 219–20, 236–37, 257–58, 264–67, 277–79, 285–90, 299–302. However, Plaintiff admits that the terms he entered on Drexel's search bar were either strings containing a combination of the word "CALIFORNIA" and the numbers one to three, or were "well-known" ingredients for agricultural products. *See id.* ¶ 45, Opposition at 7. Like in *Popa*, Plaintiff has not explained how the transmission of this information on the Website caused him "to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. Indeed, as the Court held in *Popa*, because Plaintiff fails to identify any "embarrassing, invasive, or otherwise private information" collected by Drexel's Website, Plaintiff does not plausibly allege the infringement of a protectable privacy interest. *Id.*; *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy

interest. She therefore has not identified any harm to her privacy."); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) ("Whether the right to privacy is implicated depends on 'the sort of information revealed.' Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful") (citations omitted); *Shah v. Talentbridge, Inc.,* No. 2:26-CV-00222-AH-SSCX, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (same Plaintiff as in the present case failed to show a protectable privacy interest in "generic search terms that may reveal the searcher's interests but are not linked to [his] identity").[8]

Plaintiff's argument concerning the transmission of metadata including his IP address, user-agent string, referrer URL, browser session, and time-stamped information regarding a video playback session is also precluded by *Popa*, as he does not identify any ***private*** information that the metadata relayed to third parties. *See id.* ¶ 128, *Popa*, 153 F.4th at 791. Plaintiff fails to identify any sensitive or private information that third parties could have obtained from the disclosure of metadata concerning the automatic reproduction of a video depicting agricultural fields and senior members of Drexel, nor does he allege how this would amount to a highly offensive invasion of his privacy. *See Myers v. Dick's Sporting Goods, Inc.*, No. 2:25-CV-03241-DJC-CKD, 2026 WL 1045528, at *3 (E.D. Cal. Apr. 17, 2026) (disclosure of information concerning plaintiff's activity on a sporting goods website is not highly offensive, as such information is not sensitive or private); *Diaz v. Paramount Skydance Corp.*, No. EDCV 25-02945-KK-DTBX, 2026 WL 1090958, at *4 (C.D. Cal. Apr. 20, 2026) ("[T]he mere disclosure of Plaintiffs' viewing activity without revealing Plaintiffs' names or other private personal information is not analogous to the disclosure of private information traditionally recognized by courts.").[9]

---

[8] Plaintiff avers that the search queries reflect his private research interests. FAC ¶ 120. However, the Court notes that any person exploring the possibility of conducting business with Drexel may access the Website, search for agricultural ingredients, or watch a video depicting senior members of the company. In short, nothing in Plaintiff's interactions with Drexel's Website can be traced back to his personal identity, nor has he alleged an injury that bears any resemblance to the disclosures of information that were actionable at common law.

[9] The Court does not consider the merits of Plaintiff's assertion that his clicking of the "Reject All" button in the cookie banner somehow confers standing over the FAC, as the Court has already

(Continued . . .)

As Plaintiff's standing theory rests on the disclosure of "information which is so commonly shared across the internet that it cannot reasonably be considered private," *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025), the Court concludes that Plaintiff's alleged injury is not "remotely similar" to any actionable disclosure at common law. *Popa*, 153 F.4th at 791. Indeed, Plaintiff's "search terms, even in combination with various metadata does not rise to the 'highly offensive' standard required for Article III standing." Reply at 6 [Dkt. 49]. Because Plaintiff has failed to establish that he suffered an injury in fact, the Court lacks subject matter jurisdiction over the action.[10]

## V. CONCLUSION

For the reasons discussed above, the Court grants Defendant's Motion to Dismiss.

Leave to amend should be freely granted unless it is clear that the complaint cannot be saved by amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). Here, Plaintiff has had ***two*** opportunities to amend his complaint—after filing his initial Complaint and again after the FAC—but has nonetheless failed to cure the deficiencies. Indeed, Plaintiff has already thoroughly described the terms of his search queries and the metadata that was collected without identifying ***any*** protected privacy interest. For these reasons, the Court finds that amendment under these circumstances would be undoubtedly futile.[11]

---

determined that there is no protectable privacy interest in Plaintiff's search queries or in the metadata.

[10] In light of this conclusion, the Court declines to address Drexel's remaining arguments concerning personal jurisdiction, venue, and failure to state a claim.

[11] On July 20, 2026, after briefing was concluded on the Motion, and following the hearing date, Plaintiff was declared a vexatious litigant by Judge Klausner in *Vivek Shah v. Crain Communications, Inc.*, Case No. 2:26-cv-03070-RGK-CTS (July 20, 2026), ECF 34, an action with nearly identical allegations to the present case.

Plaintiff's request for leave to amend is therefore denied. Plaintiff's FAC is dismissed without leave to amend. Plaintiff's Motion for Entry of Scheduling Order and for Order Directing Rule 26(f) Conference [Dkt. 16] is denied as moot. [12]

The Clerk of Court is directed to close the case.

Dated: September 1, 2026

Hernán D. Vera
United States District Judge

[12] Plaintiff filed a Motion for Nonmonetary Sanctions seeking an order disregarding or striking assertions made by Defendant. First Motion for Sanctions at 1–2, 5 [Dkt. 22]. The Court has reviewed Plaintiff's motion and finds that the assertions concern matters sufficiently related to the present litigation and were not made in bad faith. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith.") Accordingly, the motion is denied.

Plaintiff filed a second Motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure seeking an order to withdraw or remove statements made by defense counsel or, in the alternative, striking or disregarding such statements and instructing Drexel's counsel to refrain from making certain allegations. Second Motion for Sanctions at 4–6, 9–10 [Dkt. 26]. Drexel opposed this motion and sought monetary sanctions against Plaintiff in the amount of $59,612.30 under Rule 11. Opposition at 1 [Dkt. 41]. Under Rule 11(c), a court may impose sanctions on attorneys, law firms, or parties that violate Rule 11(b) by submitting motions "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The Court has reviewed both the Second Motion for Sanctions and the statements at issue and finds no intention to harass the opposing party, delay the present litigation unnecessarily, or needlessly increase its costs. Consequently, the Second Motion for Sanctions and Defendant's request for monetary sanctions are denied.